# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 54

**APRIL TERM, A.D. 2024**

**May 16, 2024**

LUCIA GUH-SIESEL,

Appellant
(Plaintiff),

v.

S-23-0206

BRIAN ALLAN SIESEL,

Appellee
(Defendant).

*Appeal from the District Court of Teton County*
*The Honorable Kate G. McKay, Judge*

*Representing Appellant:*
Anna Reeves Olson, Long Reimer Winegar, LLP, Casper, Wyoming. Argument by Ms. Olson.

*Representing Appellee:*
Leah C. Schwartz, Parsons Behle & Latimer, Jackson, Wyoming. Argument by Ms. Schwartz.

*Before FOX, C.J., and KAUTZ,\* BOOMGAARDEN, GRAY, and FENN, JJ.*

\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2023), he was reassigned to act on this matter on March 27, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Appellant Lucia Guh-Siesel appeals from the district court's order dismissing her divorce action against Appellee Brian Allan Siesel on grounds of forum non conveniens. We find that the district court abused its discretion when it dismissed the case and reverse and remand for further proceedings.

### *ISSUE*

[¶2]    Did the district court abuse its discretion when it dismissed Mrs. Guh-Siesel's complaint on grounds of forum non conveniens?

### *FACTS*

[¶3]    Mrs. Guh-Siesel filed her Wyoming complaint for divorce on January 4, 2023. Mrs. Guh-Siesel alleged that she had been a resident of Teton County, Wyoming, for more than 60 days immediately prior to its filing. She also alleged that she and Mr. Siesel were the parents of LS, who had resided in Wyoming for five consecutive months prior to the filing of the complaint. Mr. Siesel filed a motion to dismiss, arguing that Wyoming was an inconvenient forum and that California was a better forum because he had not been in Wyoming since October 2022, "[a]ll potential trial witnesses" were in California, and he and Mrs. Guh-Siesel had never resided together in Wyoming.[1]

[¶4]    The district court held a hearing on the motion[2] where evidence was elicited. The evidence relevant to the motion follows. The parties were married on November 9, 1996, in California. They had three children. When this matter commenced two had reached the age of majority and, one, LS, was a minor.[3] For most of their marriage, the parties resided in California where Mr. Siesel was a high school science teacher and Mrs. Guh-Siesel, an attorney. In 2022, Mr. Siesel, Mrs. Guh-Siesel, and LS decided to relocate to Wyoming, and on July 18, 2022, Mr. Siesel and Mrs. Guh-Siesel signed a lease for a home in Wilson, Wyoming. At the time, Mrs. Guh-Siesel had been diagnosed with an aggressive form of breast cancer, was undergoing chemotherapy and radiation treatments in California, and had undergone surgery.

---

[1] After Mrs. Guh-Siesel filed her divorce complaint in Wyoming, Mr. Siesel filed a divorce action in California. The record contains no information on the status of that action.

[2] A district court may consider facts outside the complaint to determine whether it should dismiss a case under W.R.C.P. 12(b)(3). 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2004); *see also Saunders v. Saunders*, 2019 WY 82, ¶ 11, 445 P.3d 991, 996 (Wyo. 2019) (parties may submit affidavits "setting forth facts relevant to the district court's determination of venue and/or *forum non conveniens*").

[3] LS turned 18 in January 2024 and is no longer a minor.

1

[¶5]     Mr. Siesel and LS moved to Wilson in August 2022.  Mr. Siesel, who was on leave from his teaching job in California, stayed in Wilson with LS for approximately eight weeks.  While in Wyoming, Mr. Siesel took steps to become a resident.  He registered the family's two cars in Wyoming, opened a post office box in Wilson, changed his mailing address from California to Wilson, registered to vote in Wyoming, got a Wyoming driver's license, and found a Wyoming primary care physician.  On October 15, 2022, Mr. Siesel returned to California for work and has remained in California since that time.  Mrs. Guh-Siesel, still battling cancer, arrived in Wyoming in October 2022.  On her arrival, Mrs. Guh-Siesel took steps to become a Wyoming resident.  She registered to vote, opened a checking account at the Bank of Jackson Hole, obtained a Wyoming driver's license, and established medical care with a Wyoming primary care physician and an oncologist.  Mrs. Guh-Siesel joined the local cancer "survivorship program," received weekly care at St. John's Health, and joined the Jackson Recreation Center.  Mrs. Guh-Siesel worked remotely from Wyoming and returned to California on most Fridays as part of her work requirements.

[¶6]     In late January 2023, Mrs. Guh-Siesel's cancer worsened, and she returned to California for three weeks of treatment.  Her California doctors advised her to take medical leave from work.  Mrs. Guh-Siesel took medical leave and returned to Wyoming.  Because Mrs. Guh-Siesel was no longer working, rent for the Wilson home became unaffordable and she terminated the lease.  Mrs. Guh-Siesel and LS lived with friends for the remainder of the school year.  Except for temporary absences—travel for work prior to her leave of absence, medical care, a school trip for LS, and the Thanksgiving holiday—Mrs. Guh-Siesel was in Wyoming from October 15, 2022, through May 2023.  When the school year ended, Mrs. Guh-Siesel and LS returned to California for the summer allowing Mrs. Guh-Siesel to obtain cancer treatment not available in Wyoming and to spend time with the parties' adult children.  In August 2023, Mrs. Guh-Siesel and LS returned to Wyoming.

[¶7]     After the hearing, the district court granted Mr. Siesel's motion to dismiss for forum non conveniens.  Mrs. Guh-Siesel timely appeals.

### STANDARD OF REVIEW

[¶8]     We review a district court's rulings regarding forum non conveniens for an abuse of discretion.  *Saunders v. Saunders*, 2019 WY 82, ¶ 10, 445 P.3d 991, 996 (Wyo. 2019).  In doing so, we recognize that "[a]lthough the doctrine of *forum non conveniens* 'leaves much to the discretion of the [district] court,' the exercise of that discretion is not unlimited." *Saunders*, ¶ 38, 445 P.3d at 1001 (quoting *Espinoza v. Evergreen Helicopters, Inc.*, 376 P.3d 960, 985 (Or. 2016) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947))).  In the exercise of its discretion "[t]he district court must recognize the plaintiff has the right to choose his forum; it cannot dismiss a case simply because another forum may be generally more convenient than the one chosen by the plaintiff." *Saunders*, ¶ 38, 445 P.3d at 1001–02 (citing *Picketts v. Int'l Playtex, Inc.*,

576 A.2d 518, 524 (Conn. 1990); Restatement (Second) of Conflict of Laws § 84 (Am. Law Inst. 1971)).

## *DISCUSSION*

### I.   *Did the district court abuse its discretion when it dismissed Mrs. Guh-Siesel's complaint on grounds of forum non conveniens?*

[¶9]   Mrs. Guh-Siesel had been a Teton County, Wyoming, resident for more than 60 days immediately preceding her divorce filing.  Wyo. Stat. Ann. § 20-2-107 sets forth the requirements for a Wyoming district court to acquire jurisdiction over a divorce action:

> (a)   No divorce shall be granted unless one of the parties has resided in this state for sixty (60) days immediately preceding the time of filing the complaint, or the marriage was solemnized in this state and one of the parties has resided in this state from the time of the marriage until the filing of the complaint.
>
> (b)   A married person who at the time of filing a complaint for divorce resides in this state is a resident although his spouse may reside elsewhere.

Wyo. Stat. Ann. § 20-2-107 (LexisNexis 2023).

[¶10]  In his motion to dismiss, Mr. Siesel did not dispute that the district court had jurisdiction over the action pursuant to § 20-2-107 but asserted that the action should be dismissed under the doctrine of *forum non conveniens*.

[¶11]  The doctrine of *forum non conveniens*, Latin for "inconvenient forum," addresses the "rare" case where "jurisdiction and venue for an action are proper in a forum," but the forum is "seriously inconvenient to the parties, witnesses, or the court."  *Espinoza*, 376 P.3d at 972; *see also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) ("The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power' because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case. . . . Therefore, . . . *forum non conveniens* as 'an exceptional tool to be employed sparingly,' and not a 'doctrine that compels plaintiffs to choose the optimal forum for their claim.'" (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002))).  Forum non conveniens "allows a court with jurisdiction to dismiss a case because the parties and justice would be better served if the case were brought elsewhere." *Lund v. Lund*, 2022 WY 2, ¶ 25, 501 P.3d 1222, 1227 (Wyo. 2022) (citing *Pokrovskaya v. Van Genderen*, 2021 WY 68, ¶ 9, 487 P.3d 228, 230 (Wyo. 2021)).  Under the doctrine, a court with jurisdiction "[may decline to] entertain the suit if it believes itself to be a seriously

inconvenient forum[,] provided that a more appropriate forum is available to the plaintiff." *Saunders*, ¶ 21, 445 P.3d at 998 (quoting Restatement (Second) of Conflict of Laws § 84).

[¶12]   To determine whether to dismiss a case for forum non conveniens, Wyoming courts apply a two-stage test originally articulated in *Gulf Oil*, 330 U.S. at 506–10, 67 S.Ct. at 842–44. *Saunders*, ¶¶ 26, 31, 445 P.3d at 999–1000 (adopting *Gulf Oil* test).

> In the first stage, the court determines whether an alternate forum is available and capable of providing relief.  This is a threshold issue because, if no adequate alternate forum exists, the court must not dismiss the case.  To be considered adequate, the parties must be amenable to service of process in the alternate forum and the court in the alternate forum must have jurisdiction over the matter.  In addition, the alternate forum's law must be capable of providing a meaningful remedy.  The alternate forum is not adequate if some procedural bar, such as a statute of limitations, would prevent litigation.
>
> In the second stage, the court balances the private and public interests to determine whether it should grant the motion to dismiss for *forum non conveniens*.  In doing so, the court must keep in mind the plaintiff's choice of a forum should not be disturbed except for weighty reasons.  Stated another way, a court should dismiss a case for *forum non conveniens* only when the private and public interests strongly favor litigating the matter in an alternate forum.

*Lund*, ¶ 26, 501 P.3d at 1227–28 (quoting *Saunders*, ¶¶ 27–28, 445 P.3d at 999).

[¶13]   Mrs. Guh-Siesel contends that the district court abused its discretion when it dismissed the case because it failed to properly analyze the *Gulf Oil* factors.  We examine the district court's application of the factors under each stage of the *Gulf Oil* test below.

## A.    Stage 1: An Adequate Alternate Forum

[¶14]   "To be considered adequate, the parties must be amenable to service of process in the alternate forum[,] and the court in the alternate forum must have jurisdiction over the matter," and the alternate forum must be able to provide a remedy.  *Lund*, ¶ 26, 501 P.3d at 1227–28 (quoting *Saunders*, ¶¶ 27–28, 445 P.3d at 999).

[¶15]   The district court found that California was an adequate alternate forum.  It reasoned:

4

The marital home, the parties' employment or former employment, and nearly all other daily contacts of life, with the exception of the parties' minor daughter, are all in California. . . . Indeed, a divorce action has been filed in California and was apparently set for a hearing in July, 2023.

.   .   .

[A]menable means "Legally answerable; liable to being brought to judgment <amenable to process>." Black's Law Dictionary (11th ed. 2019). This definition clearly relates to jurisdiction statutes . . . . While neither party presented to this court the California divorce residency or jurisdiction statutes, it is certain that, under the definition above, Plaintiff is amenable to service in California, and she has not demonstrated why this is not so. In fact, she has been served in California, albeit by publication. The question is whether she is subject to the jurisdiction of the California court, and there has been no showing that she is not.

.   .   .

The first stage of the *Gulf Oil* test has been met here[.]

[¶16]  Mrs. Guh-Siesel argues that the district court abused its discretion when it reached its conclusion because Mrs. Guh-Siesel was not "amenable" to service in California; the district court never determined whether California had jurisdiction over the matter; and a divorce in California would not provide a "reasonably prompt" resolution to the litigation.

[¶17]  We turn first to Mrs. Guh-Siesel's argument that she was not amenable to service of process in California because service of process in the California case was perfected through service by publication. Mrs. Guh-Siesel argues, "Notably, in California, a litigant is only 'amenable to process' if the 'possibility exists for serving the defendant in a manner *other than by publication.*'" In fact, *Watts v. Crawford* stands for the opposite proposition. The *Watts* court explained:

an inquiry into whether a party was "amenable to process" would refer to an examination of whether that party was *subject to being served* under applicable constitutional and statutory provisions. Nothing . . . persuades us that the phrase "amenable to the process of the court" was intended to, or

5

> should, refer instead to a defendant's reasonable availability,
> as a practical matter, for service of process.

*Watts v. Crawford*, 896 P.2d 807, 817 (Cal. 1995). The *Watts* court held "the finding that defendant was not reasonably available for service of process, other than by publication, was **not** the equivalent of a finding that defendant was not amenable to the process of the court . . . ." *Id.* at 819 (emphasis added). To be amenable to process in California means merely that one must be "subject to being served." *Id.* at 817. We agree with the district court, Mrs. Guh-Siesel was amenable to being served in California and, in fact, she was served there, albeit by publication.

[¶18]   We next turn to Mrs. Guh-Siesel's argument that the district court improperly failed to decide whether California has jurisdiction. A finding that the alternative forum has jurisdiction is necessary to satisfy the first stage of the *Gulf Oil* test. *Lund*, ¶ 26, 501 P.3d at 1227–28; *Saunders*, ¶¶ 27–28, 445 P.3d at 999. The district court did not make such a finding. On the question of jurisdiction, the district court noted that "there has been no showing" that Mrs. Guh-Siesel is not subject to the jurisdiction of the California courts.

[¶19]   Notwithstanding the district court's failure to determine the question, we conclude the record demonstrates that California has jurisdiction over Mr. Siesel's divorce action as a matter of law. The district court found that Mr. Siesel is a resident of California. California statutes require that California courts may dissolve a marriage when one party to the marriage is a resident of California.[4] California has jurisdiction to hear a divorce action between Mr. Siesel and Mrs. Guh-Siesel.

[¶20]   Mrs. Guh-Siesel's final contention with respect to the first stage of the *Gulf Oil* analysis is that California would not provide a reasonably prompt resolution. In order to satisfy the first stage of the *Gulf Oil* test, the alternate forum's law must be capable of providing a "meaningful remedy," but that remedy "need not be the same as that provided by the [plaintiff's chosen forum]." *Saunders*, ¶ 37, 445 P.3d at 1001 (quoting *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1174 (10th Cir. 2009)). "To fail, the remedy in the alternate forum must be 'so clearly inadequate that it is no remedy at all.'" *Lund*, ¶ 30, 501 P.3d at 1228 (quoting *Saunders*, ¶ 37, 445 P.3d at 1001). At the hearing, Mrs. Guh-Siesel testified

---

[4] California's Family Code provides:

> (a) Except as provided in subdivision (b) [which pertains to same-sex marriages], **a judgment of dissolution of marriage may not be entered unless one of the parties to the marriage has been a resident of this state for six months** and of the county in which the proceeding is filed for three months next preceding the filing of the petition.

Cal. Fam. Code § 2320 (West 2024) (emphasis added); *see also In re Marriage of Thornton*, 185 Cal. Rptr. 388 (Ct. App. 1982) (California courts had jurisdiction over divorce action filed by wife, who resided in Australia, against husband, who was a California resident, when their last marital home had been in California and they had property in California).

that she heard "horror stories" about lengthy California divorce proceedings and that she did not "have the time" due to her failing health. While we sympathize with Mrs. Guh-Siesel's concerns about the potential for protracted proceedings in California, those concerns do not render California an inadequate forum.[5]

[¶21] We find no abuse of discretion in the district court's conclusion that California provides an adequate forum, and we turn to the second stage of the *Gulf Oil* analysis.

## B.    Stage 2: Balance of Public and Private Interests

[¶22] The second stage of the *Gulf Oil* analysis requires the district court to balance the private and public interests bearing on whether to grant the motion to dismiss for forum non conveniens. *Saunders*, ¶ 38, 445 P.3d at 1001–02. Private interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; all other practical problems that make trial of a case easy, expeditious and inexpensive; and the enforceability of a judgment if one is obtained.
>
> *Saunders*, 2019 WY 82, ¶ 29, 445 P.3d at 999–1000 (cleaned up).

*Lund*, ¶ 35, 501 P.3d at 1230.

[¶23] Public interest factors include:

> the administrative difficulties and burden on the court in the plaintiff's chosen forum; the unfairness of imposing the expense of trial and the burden of jury duty on residents of a community with little or no connection to the controversy; the interest in "having localized controversies decided at home"; and choice of law issues, including whether the court will be required to apply its own law, or that of another jurisdiction.

---

[5] These concerns do, however, bear on the parties' private interests, which are balanced in the second stage of the *Gulf Oil* analysis. *Saunders*, ¶ 41, 445 P.3d at 1002 ("if such problems exist but do not reach the level of depriving the plaintiff of a remedy, they may still be considered in balancing the private interest factors in the second step"). *See infra* ¶¶ 22, 32.

*Espinoza*, 376 P.3d at 975 (quoting *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843–44).

[¶24] The starting point of the balancing analysis is the plaintiff's right to choose the forum. Initially, this right causes the scale to be heavily weighted against dismissal. The balance of public and private interests must decisively upend the scale before a case may be dismissed. We have said, in this stage, the "district court must recognize the plaintiff has the right to choose his forum; it cannot dismiss a case simply because another forum may be generally more convenient than the one chosen by the plaintiff." *Saunders*, ¶ 38, 445 P.3d at 1001. *See also Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843 ("[U]nless the balance [of interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). "**In other words, to support a dismissal for *forum non conveniens*, the combination of factors must significantly outweigh the policy of respecting the plaintiff's choice of forum.**" *Saunders*, ¶ 38, 445 P.3d at 1002 (emphasis added).

[¶25] While the district court quoted *Saunders*' limitation on its discretion, our examination of the record and the district court's ruling convinces us that the district court did not begin its analysis with the scale weighted in favor of Mrs. Guh-Siesel's chosen forum and it did not require Mr. Siesel to make a strong showing that a divorce in Wyoming would be more than a general inconvenience to him.

[¶26] Mr. Siesel, as the party seeking dismissal, was required to "identify specific evidence material to the case and 'demonstrate that accessing it for purposes of litigating in [Wyoming] will be extraordinarily difficult.'" *Saunders*, ¶ 39, 445 P.3d at 1002 (quoting *Espinoza*, 376 P.3d at 988).

### 1. Private Interests

[¶27] "In considering the parties' private interests, a court must 'weigh the relative advantages of trying the case in the plaintiff's chosen forum against the obstacles to the defendant obtaining a fair trial.'" *Lund*, ¶ 35, 501 P.3d at 1230 (quoting *Saunders*, ¶ 29, 445 P.3d at 999). "This factor is fairly broad" and should include:

> the practical burden of a new action in the alternate forum; rules particular to the alternate forum that make it more difficult to initiate and sustain an action; the need to join third parties and the relative ease or difficulty of doing so in each forum; and any potential difficulty in enforcing a judgment obtained in the alternate forum.

*Saunders*, ¶ 40, 445 P.3d at 1002.

[¶28]  Mrs. Guh-Siesel contends that Mr. Siesel failed to establish that Wyoming was a "seriously inconvenient forum" and that he presented no specific evidence establishing that litigation in Wyoming would be "extraordinarily difficult for him."

[¶29]  The district court found as follows:

> [Mr. Siesel] cites the easy, expeditious, and inexpensive access to accountants, real estate appraisers, investment brokers, financial lenders, creditors and lay witnesses [as reasons California is the more convenient forum.] Exhibits 12 and 13, were admitted in support of this, which are respectively a bill evidencing debt collection from an Illinois company and a notice (not a bill) from the IRS from a Fresno, California address. Both these items relate to debts incurred in California . . . . The parties have a tax attorney in California.

[¶30]  Mr. Siesel provided no specific evidence with regard to "accountants, real estate appraisers, investment brokers, financial lenders, creditors[, or] lay witnesses." The evidence he did provide was general in nature and limited. Mr. Siesel testified that he and Mrs. Guh-Siesel owned stocks and investments:

> Q.     (Mrs. Guh-Siesel's attorney): In addition to the home, you have some stocks and investments, correct?
>
> A.     (Mr. Siesel): Yes.
>
> Q.     You also have some bank accounts and personal property, and automobiles, correct?
>
> A.     Correct.
>
> Q.     Neither of you owns a business, correct?
>
> A.     Correct.

[¶31]  Mr. Siesel did not identify where bank accounts and investments were located. He did not present any evidence related to potential difficulties, let alone extraordinary difficulties, of producing the records of these accounts in a Wyoming proceeding. Mr. Siesel did not identify any witness by name whose testimony might be material to the case or explain why any of the generally referenced witnesses, for example, the parties' tax attorney, would be unwilling or unable to testify at a trial in Wyoming.

9

[¶32]  The district court relied upon exhibits 12 and 13.  Exhibit 12 was a photograph of a bill from a debt collector in Illinois.  The extent of Mr. Siesel's testimony regarding exhibit 12 was that he believes the bill "is more than it should be."  He did not connect the bill to his forum non conveniens argument.  For instance, he did not testify that the bill was a marital debt, whether it had been resolved, or in what way the resolution of an Illinois invoice in Wyoming was significantly more inconvenient than its resolution in California.  Exhibit 13 is an IRS notice referencing proposed changes to Mr. Siesel and Mrs. Guh-Siesel's 2021 tax return.  Mr. Siesel testified that exhibit 13 was a notice of an IRS bill for "income that was not included in [the Siesel's] 2021" tax return.  Mr. Siesel attested that the Siesels "are being audited for 2020, taxes and [their] tax attorney . . . is in the San Jose area[.]"  Mr. Siesel did not give the name of the tax attorney, explain the need for the tax attorney's testimony in the divorce case, provide the status of the IRS audit, or testify about obstacles in accessing the tax attorney's testimony that would make litigation in Wyoming extraordinarily difficult.

[¶33]  The district court also found that because Mrs. Guh-Siesel "continues to return to California frequently, and even to live there for extended periods of time[,] . . . [t]rial of this matter in California would clearly be easier, more expeditious and less expensive."  Mrs. Guh-Siesel asserts that the district court's finding that a trial in California would be "easier, more expeditious and less expensive" was not supported by the record.  The record lacks evidence that a divorce trial in California would be less costly than one in Wyoming.  Undoubtedly, a trial in California would be easier for Mr. Siesel.  At the same time, a trial in California would be more difficult for Mrs. Guh-Siesel.  Mrs. Guh-Siesel testified that travel was extraordinarily challenging for her because of her chemotherapy treatments.  The record contains Mrs. Guh-Siesel's testimony regarding her opinion that divorces in California can be lengthy procedures and that because of her illness, a delayed resolution would be, not only less expeditious but could take "years," implying that it might possibly outlast her.

[¶34]  Mr. Siesel fell short in identifying "specific evidence material to the case" and demonstrating "that accessing it for purposes of litigating in [Wyoming] will be extraordinarily difficult."  *Saunders*, ¶ 39, 445 P.3d at 1002.

[¶35]  The district court also considered the location of the parties' real property.  While ownership of real property is not required to obtain a divorce in Wyoming, the location of property, especially when the trial will require viewing the property, is a proper factor to consider when weighing private interests.  *See, e.g., Lund*, ¶ 38, 501 P.3d at 1230.  Here, the district court found that no viewing of the property would be necessary, but weighed the California property heavily in favor of dismissal.  The district court stated:

> The court notes that as a divorce action there will be no need
> to view the premises.

. . .

> The court finds that the factors to be considered in the balancing of private interests weigh in favor of [Mr. Siesel]. The court must view this matter for what it is – a divorce, with zero property interests, and apparently zero custody issues[6] . . . tying the case to Wyoming. . . . [Mrs. Guh-Siesel] is the only person, interest, witness or evidence in Wyoming. The remainder of the evidence is not dispersed throughout other jurisdictions – it is all in California. This is in contrast with *Saunders*, where the plaintiff in that matter at least owned a ranch and had other business interests in Wyoming and claimed that he had moved permanently to Wyoming. While the evidence in *Saunders* was *primarily* in North Carolina, here the evidence is *almost exclusively* within the State of California.

Mrs. Guh-Siesel argues that the district court placed too much weight on the fact that the parties did not own real estate in Wyoming.

[¶36] The hearing transcript reveals that, while the Siesels did not own real property in Wyoming, they had personal property in Wyoming. When they moved to Wyoming in August 2022, the Siesels registered two vehicles in Wyoming and opened a bank account here.

[¶37] The district court relied on *Saunders* to support its conclusion that because the home was in California, California was a better forum. In *Saunders*, this Court adopted the *Gulf Oil* factors, but remanded for the district court to apply those factors. *Saunders*, ¶¶ 44–45, 445 P.3d at 1003. While *Saunders* recognized that the parties there owned multiple properties and had multiple business interests in both North Carolina and Wyoming, it did

---

[6] We note that, while there may have been custody issues at the time Mrs. Guh Siesel filed her complaint, those issues are now moot because LS is no longer a minor. *Powder River Basin Res. Council v. Wyo. Dep't of Env't Quality*, 2020 WY 127, ¶ 10, 473 P.3d 294, 297 (Wyo. 2020) ("A case is moot when the determination of an issue will have no practical effect on the existing controversy. Therefore, 'if events occur during the pendency of an appeal that cause a case to become moot or make determination of the issues unnecessary, we will dismiss it.'" (quoting *In re SNK*, 2005 WY 30, ¶ 6, 108 P.3d 836, 838 (Wyo. 2005))). *See also CL v. ML*, 2015 WY 80, ¶¶ 21–23, 351 P.3d 272, 279 (Wyo. 2015) (because travel restriction expired, Mother's claim that it violated her constitutional right to travel is moot); *State, in Int. of K.B.*, 2017 UT App 210, ¶ 1, 407 P.3d 1084, 1085 n.1 (holdings related to child who was no longer a minor are moot); *In re Marriage of White*, No. E059861, 2015 WL 215447, at *5 (Cal. Ct. App. Jan. 15, 2015) ("child related issues were moot since [the parties'] daughter was no longer a minor at the time of the . . . judgment"); *Dressel v. Dressel*, 221 S.W.3d 475, 477 n.2 (Mo. Ct. App. 2007) (custody issues are moot because child "is no longer a minor, and there is nothing in the record that indicates that legal or physical custody would be an issue in the future").

11

not determine what weight, if any, should be given to those facts in the forum non conveniens analysis. Here, the parties had limited real and personal property in both California and Wyoming. Mr. Siesel testified at trial that it was his "understanding" that the couple's California "home will either be sold in this divorce or it'll be appraised, and one" of them will receive it. The location of their home in California simply does not weigh heavily in favor of one jurisdiction over another.

[¶38] Given the evidence provided, the district court abused its discretion when it concluded that the private interests in this case outweighed Mrs. Guh-Siesel's choice of forum.

## 2. Public Interests

[¶39] The district court determined that the public interests also favored litigation in California. In *Saunders*, we said:

> [A]nalysis of any administrative difficulties in litigating the case . . . could include the time and expense to determine matters that are not of particular interest to Wyoming and/or the congestion (or lack thereof) in the court's calendar. *Espinoza*, 376 P.3d at 990; Restatement (Second) Conflict of Laws § 84. However, the doctrine of *forum non conveniens* may not be used as a mechanism to control the court docket. *Id.*

*Saunders*, ¶ 44, 445 P.3d at 1003 (footnote omitted).

[¶40] Here, the district court found:

> [F]irst, the administrative difficulties and burden on this court cannot be predicted to be any more or less than any other divorce action. Second, the burden and expense on the community is again, the same as any other divorce action. . . . [T]he expense of trial upon the court and by extension the community is not trivial. Residents of the community are entitled to have their own controversies heard and decided in the courts of this state and county. When litigants who do not have significant connections to the state bring controversies to court that have little to no impact on anyone other than the litigants, the community suffers the consequences of a more congested docket. Other residents should not have to wait in line behind controversies which have little to no connection to the state and community. *See e.g. Lund*, [¶ 42, 501 P.3d at

12

1231] ("This simply is not a dispute over a Teton County property, and the court and the community should not be burdened with a controversy with which the community has no connection.").

Third, as a divorce, the public may have little interest in having any divorce "decided at home." But this factor . . . weighs in favor of dismissing and allowing the controversy to be decided in the jurisdiction that, on balance, is clearly "home:" California. Here, in contrast even with *Saunders*, and as noted above, the parties have no property or business holdings within Wyoming, the distribution of which could impact public or employees or anyone other than the parties themselves.

As to the fourth factor, this court has no evidence before it about any particular choice of law issues, and considers this factor to be neutral.

[¶41] In short, the district court concluded the public interests weighed in favor of dismissal based on the parties' "home" in California, and its view that "[o]ther residents should not have to wait in line behind controversies which have little to no connection to the state and community." The record does not support these conclusions. Mrs. Guh-Siesel was a Wyoming resident with significant connections to the Jackson community, as a community member and as a parent of a child attending school there. *Supra* ¶ 5. Her access to the Wyoming courts for divorce is governed by Wyo. Stat. Ann. § 20-2-107 which sets forth the requirements for a party to establish a claim for divorce in Wyoming. *See supra* ¶ 9. Mr. Siesel may have reestablished his California residency, but Mrs. Guh-Siesel and LS have not changed their Wyoming residency.

[¶42] We have explained that "the central question which a court must answer when weighing the public interests . . . is whether the case has general nexus to the forum sufficient to justify the forum's commitment of judicial time and resources to it." *Saunders*, ¶ 43, 445 P.3d at 1003 (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 791 (D.C. Cir. 1980), *overruled in part on other grounds by Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981)). Given the facts in the record, the answer to that "central question" must be yes, Mrs. Guh-Siesel's complaint for divorce has a nexus to Wyoming sufficient to justify Wyoming's commitment of judicial time and resources.

## *CONCLUSION*

[¶43]  The record does not establish that private and public interests outweigh Mrs. Guh-Siesel's right to select Wyoming as the forum for her divorce action.  The district court abused its discretion when it dismissed Mrs. Guh-Siesel's complaint on forum non conveniens grounds.  We reverse and remand.